IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| Claude David Convisser, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| The Haven at First and Market, Inc., | ) |
| | ) |
| Defendant. | ) |

Civil Action No. 3:25-cv-00079

## MEMORANDUM OPINION

Plaintiff David Claude Convisser, proceeding *pro se*, sues Defendant the Haven at First and Market, a day shelter and housing resource center, for violations of the Americans with Disabilities Act ("ADA"). (*See* Compl. (Dkt. 1).)  Convisser alleges that Defendant is denying him equal access to its services and failing to reasonably accommodate his disabilities because Defendant has told Convisser not to store his boots and bicycle shorts outside of his designated plastic storage bin.  (*See id.* at 12.)  This matter is before the court on Convisser's motion for leave to proceed *in forma pauperis* (Dkt. 2).  The court will grant the motion and dismiss Convisser's complaint under 28 U.S.C. § 1915(e)(2)(B)(ii).

## I.    Background[1]

Convisser has been homeless living in the Charlottesville area since June 25, 2024. (Compl. at 2.)  He has been receiving meals, using showers, doing laundry, and benefitting from other services provided by the Haven since July 2024.  (*Id.*)  Convisser struggles with

---

[1] The facts alleged in Convisser's complaint at accepted as true when evaluating whether the complaint states a claim upon which relief may be granted.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

two physical limitations, a bunion on his right foot and a reappearing case of "butt boils," that can make walking and biking painful without the right equipment. (*Id.* at 3–4.) The latter is especially burdensome for Convisser at times, since he bikes an average of 50 miles per day. (*Id.* at 13.) To try to mitigate these limitations, he uses specially cut shoes and padded biking shorts. (*Id.* at 4–5.)

In November 2024, the Haven staff gave Convisser exclusive use of one of their 65 plastic storage bins, so he could store clothing and personal effects at the shelter. (*Id.* at 5.) The purpose of these bins is to "enable homeless people like plaintiff to be able to store some of their clothing and personal effects in a setting that is clean, dry and somewhat secure . . . while they navigate their overnight homeless status[.]" (*Id.*) Convisser usually stores his backup pair of shoes behind or on top of his bin, worried that they would not dry if they were stored inside the bin. (*Id.*; Pl.'s Decl. at 2 (Dkt. 4).) He also lays his bicycle shorts on top of his bin to dry after handwashing them in the men's restroom. (Compl. at 5–6.) Convisser does not use the Haven's commercial dryers or hand-held electric dryers for his shoes because he is worried the heat would weaken the glue. (*Id.* at 6.) He does not put his bicycle shorts in the commercial dryer because it is often occupied and sharing dryers with other guests may "lead to disputes between them." (*Id.*) Convisser is not the only guest that stores personal items on top of or next to his bin, and his external items do not protrude from beyond the edge of the shelf on which the bin sits or otherwise obstruct the space around the bin shelves. (*Id.* at 7–8.)

In mid-September 2025, Convisser formally requested in writing a reasonable accommodation under the ADA to allow him to leave these items outside or on top of his bin

to dry properly.  (*Id.* at 8.)  The Haven rejected this request, and a staff member explained to Convisser in person the following week that he must store all his items inside his bin.  (*Id.* at 8–9.)  The staff member also explained that if Convisser did not follow these instructions, he may be suspended from the shelter for two weeks.  (*Id.* at 9.)  The Haven's rules and policies allow staff to suspend guests that "are not following [their] house rules."  (*Id.* at 9.)

Convisser asserts that he is being discriminated and retaliated against in violation of the ADA, and that by enforcing the rule that items need to be kept inside the bins, the Haven would be "nullif[ying] his abatement of the impairing effects of both of his physical disabilities, leaving him potentially imminently with the inability to engage in the major life activities of walking and sitting."  (*Id.* at 11.)  On September 25, 2025, Convisser followed his complaint with a motion for an *ex parte* temporary restraining order and preliminary injunction, asking the court to order the Haven to allow storage of his items outside his bin and to refrain from suspending or otherwise punishing plaintiff for doing so.  (Mot. For Temp. Restraining Order, Ex. 1 at 9 (Dkt. 3-1).)

## II.    Standard of Review

After allowing a plaintiff to proceed *in forma pauperis*, the court must "dismiss the case at any time" if it determines that the action (1) "is frivolous or malicious"; (2) "fails to state a claim on which relief may be granted"; or (3) "seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B).  "Dismissals on these grounds are often made *sua sponte* prior to the issuance of process, so as to spare prospective defendants the inconvenience and expense of answering such complaints."  *Neitzke v. Williams*, 490 U.S. 319, 324 (1989).

When evaluating whether a complaint "fails to state a claim on which relief may be granted" under § 1915(e)(2)(B)(ii), the court applies the same standard that applies to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). *De'Lonta v. Angelone*, 330 F.3d 630, 633 (4th Cir. 2003). The court must accept all well-pleaded factual allegations as true and view the complaint in the light most favorable to the plaintiff. *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). The court must also construe *pro se* complaints liberally. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). To avoid dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

### III.    Analysis

Convisser alleges he was effectively denied the opportunity to participate in the Haven's services on the basis of his disability. (Compl. at 12.) Title III of the ADA provides that "no individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation." 42 U.S.C. § 12182(a). "To prevail under Title III of the ADA, a plaintiff must show that: (1) he is disabled within the meaning of the ADA; (2) the defendant owns, leases, or operates a place of public accommodation; and (3) the defendant discriminated against him because of his disability." *J.D. by Doherty v. Colonial Williamsburg Found.*, 925 F. 3d 663, 669–70 (4th Cir. 2019). Even assuming Convisser's physical limitations make him disabled within the meaning of the ADA, and the Haven qualifies as a place of public accommodation, Convisser does not allege sufficient facts to plausibly allege that the Haven discriminated against him because of his disability.

- 4 -

The Haven appears to have a rule that requires guests to keep their personal items inside their storage bins.  (Dkt. 4-6 at 2.)  According to staff, if items are stored outside the bins, "other guests will also request or demand additional space[,] . . . it is hard to monitor or police theft of belongings, and that storage outside of the bins creates smells, molds, etc."  (*Id.*)  This reasoning is entirely consistent with the Haven's denial of Convisser's request to store his items outside of his bin.  Convisser asserts that the Haven rarely enforces this rule, but admits that the rule was enforced in July 2025 and that he was reminded in another instance "months ago" that he should not be storing his items outside his bin. (*See* Compl. at 7, 9.) Even if the Haven selectively enforces its bin storage rule, Convisser alleges no facts consistent with an inference that the Haven is enforcing the rule as to him *because* of his physical limitations.

Convisser also alleges that the Haven "intimidated, threatened, and coerced, or attempted to intimidate, threaten or coerce him with the purpose of interfering with his right or privilege secured by" the ADA.  (Compl. at 13.)  In support, Convisser only alleges that the Haven staff directed him to follow their rule about bin storage, and explained that if he did not, he may be subject to suspension from the shelter.  (*See, e.g.,* Compl. at 8–9.)  Convisser admits that the Haven has a written policy declaring that their "shift supervisors and departmental staff have the authority to suspend anyone not following [their] house rules." (Compl. at 9.)  Convisser therefore fails to plausibly allege that the Haven intimidated, threatened, or coerced him with the purpose of interfering with his ADA rights.

Finally, Convisser alleges that the Haven failed to make a reasonable modification of its bin storage policy as required under the ADA.  (Compl. at 12.)  The ADA requires public

accommodations to "make *reasonable* modifications in policies, practices, or procedures, when such modifications are *necessary* to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would *fundamentally alter* the nature of such goods, services, [etc.]." *J.D. by Doherty*, 925 F.3d at 671; 42 U.S.C. § 12182(b)(2)(A)(ii).  The plaintiff bears the burden of establishing that the requested modification is both necessary and reasonable.  *J.D. by Doherty*, 925 F.3d at 671.  For each step, the ADA requires an "individualized inquiry" based on particular circumstances.  *Id.* (quoting *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 688 (2001)).

Convisser does not allege that he is denied from using his storage bin.  The main thrust of his complaint is that his physical limitations will worsen if he cannot ensure he has dry shoes and shorts, and that he would like the Haven to grant him an exception to their storage bin policy to help him manage that.  While the court is sympathetic to Convisser's medical situation, it cannot find his request is "necessary" for him to have a "like experience" using the bins as a nondisabled person would have.  *Id.* at 672; *A.L. v. Walt Disney*, 900 F.3d 1270, 1296 (11th Cir. 2018).  The Haven's lack of strict enforcement for the storage bin policy does not mean that Convisser must be allowed to store his items outside and on top of his bin to have a "like experience" as other nondisabled guests.  And even if it did, Convisser has not alleged that any selective enforcement of the policy is *based on* his physical disabilities.  The court therefore cannot find that Convisser plausibly alleges the Haven's failure to make a reasonable accommodation under the ADA.

## IV.    Conclusion

The court understands Convisser's frustrations with this situation, but he has not alleged a plausible claim that the Haven has violated the ADA.  For the reasons stated above, Convisser's application to proceed *in forma pauperis* will be **GRANTED** and his complaint will be **DIMISSED** without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).  Accordingly, Convisser's motion for a temporary restraining order and preliminary injunction will be **DENIED** as moot.

An appropriate Order will issue.

**ENTERED** this 26th day of September, 2025.

HON. JASMINE H. YOON
UNITED STATES DISTRICT JUDGE